# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MATHEW NEISLER,

            Plaintiff,

     -vs-                                    Case No.   13-CV-821

ROBERT TUCKWELL,
JAMES MUENCHOW,
and WILLIAM POLLARD,

            Defendants.

## DECISION AND ORDER

The *pro se* plaintiff, Mathew Neisler, has filed this civil rights action pursuant to 42 U.S.C § 1983. The plaintiff was granted leave to proceed *in forma pauperis* on a claim that the defendants denied him the opportunity to participate in an inmate program based on his disability in violation of the Americans with Disabilities Act. The defendants have filed a motion for summary judgment. For the reasons explained herein, the Court will grant the motion.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A.,*

*Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## RELEVANT FACTS[1]

At all times relevant to this matter, the plaintiff was in the custody of the Wisconsin Department of Corrections (DOC) as a state prisoner, confined at the Waupun Correctional Institution (WCI). Defendant Robert Tuckwell (Tuckwell) is employed by the DOC as Food Service Administrator at WCI. He is responsible for the planning, direction,

---

[1] Facts are taken from the Defendants' Proposed Findings of Fact and the plaintiff's declaration (ECF No. 40).

2

and operation of WCI's food service program and ensuring that daily nutritional needs are met. Defendant James Muenchow (Muenchow) is employed by the DOC as the Inmate Complaint Examiner (ICE) at WCI. He has such duties and responsibilities as generally defined by Wisconsin Administrative Code, chapter 310. As ICE, Muenchow has access to offender complaints filed by inmates while incarcerated at WCI. Defendant William Pollard (Pollard) is employed by the DOC as Warden of WCI. He is responsible for the overall administration and operation of the institution. Pollard has the responsibility at the institution level for implementing all DOC policies and directives, and legislative and judicial mandates. Pollard is familiar with policies applicable to WCI and the general operation of this institution.

The plaintiff was allowed to proceed on his claims under the Americans with Disabilities Act that Tuckwell discriminated against him when the plaintiff's employment as an inmate stockman was ended for "medical reasons" because Tuckwell knew that the plaintiff was injured as a result of work and that the injury prevented him from performing major life activities. The plaintiff was allowed to proceed on his claims that Muenchow and Pollard failed to correct the alleged violations after they became aware of them.

**Work Assignment**

On November 19, 2011, the plaintiff became employed as a stockman in Food Service.[2] In this position, his duties included, but were not limited to, receiving and storing

---

[2] The plaintiff avers that he started as stockman on September 25, 2011. (Neisler Decl. ¶ 14.)

3

food supplies. The plaintiff was provided on-the-job-training from other inmates.

On March 9, 2012, the plaintiff was involved in a work-related accident when a flat bed cart fell on him as he was unloading an elevator. The plaintiff sustained a one-inch laceration to the bottom of his amputated leg and his prosthetic leg had to be sent off-site for repair. After investigation, it was determined that the accident happened because other inmate workers overloaded the elevator and the flat bed carts were stacked on top of each other contrary to proper procedure.

The plaintiff continued to work in the position of stockman until July 25, 2012, when he was placed on "sick cell" status due to difficulties walking. "Sick cell" is a status where an inmate is sent back to his cell due to illness. The Health Services Unit (HSU) staff, duty sergeant, or supervisor can place an inmate on "sick cell." The plaintiff was not forced to work with a broken prosthetic from March 9, 2012 to July 25, 2012. He had the right to suspend work due to his injuries, however, based on Tuckwell's knowledge and review of the records, the plaintiff made no claims or complaints to Tuckwell stating he was unable to work before July 25, 2012. (Tuckwell Decl. ¶ 15.)[3]

Due to the plaintiff's inability to perform the job duties of the stockman position because of his placement in sick cell by HSU directive starting July 25, 2012, Tuckwell informed HSU Manager Belinda Schrubbe on September 27, 2012, that the

---

[3] The plaintiff avers that when he returned to work after the accident, the pain in his amputated limb gradually became worse and that he complained to Chef Patricia Polonski, Food Service Manager Ella Krueger, and "FSA Tuckwell in the rare event that he was available." (Neisler Decl. ¶ 27.)

4

plaintiff's two-year term was up in November and asked that they remove him from food service due to medical reasons and stated that the institution need to fill the position.[4] Tuckwell talked to the plaintiff and informed him that his employment in food service was terminated for "medical reasons" effective October 1, 2012. Tuckwell explained to the plaintiff that he needed to fill this position due to institutional needs but that Tuckwell would pay him up to his two-year limit date. Tuckwell further informed the plaintiff that he was a good worker and that Tuckwell would be happy to have him back after his two-year limit was up again.

According to the defendants, Tuckwell did not terminate the plaintiff's employment due to his disability. (Tuckwell Decl. ¶ 19.) According to the plaintiff, when Tuckwell asked Schrubbe to remove him for "medical reasons" due to his inability to perform the job duties because of a broken prosthetic, Tuckwell did indeed terminate the plaintiff because of his disability.

The plaintiff held a position that was critical to the operations of the Food Service department at WCI. Tuckwell decided to terminate the plaintiff's employment in Food Service because he was not able to perform the duties of the position at that time due to the injury and broken prosthetic. If the prosthetic had been repaired prior to his termination, Tuckwell would have maintained the plaintiff's employment in this position up to the point where he would have been terminated (November 19, 2012) due to policy.

---

[4] The DOC Division of Adult Institutions (DAI) Policy and Procedure 309.55.01 states that no inmate may keep an institution job longer than two years.

5

Because the plaintiff was no longer employed, he was placed on Involuntary Unassigned status on October 16, 2012. Involuntary Unassigned status is a paid status at usually $0.05 an hour for forty hours a week. However, it was decided to continue to pay the plaintiff for the stockman position up to the point where he would have been terminated (November 19, 2012) due to DAI policy because his term limit was up shortly and he was injured at work.

The plaintiff received a "No Work" medical restriction by medical staff on October 15, 2012, until his prosthesis was repaired. Due to the "No Work" restriction, the plaintiff would not have been allowed to maintain the Food Service work assignment if he had not already been terminated. The plaintiff was on Involuntary Unassigned status until January 11, 2013, when he got a new job in clothing distribution making repairs.

**Offender Complaint**

The plaintiff submitted Offender Complaint WCI-2012-21424 on October 8, 2012, complaining that Tuckwell had notified him that his "employment with Food Service was being terminated because Neisler had not been there, and that [Tuckwell] needed bodies." The plaintiff further asserted that his "pay would be ending effective the first of the month" and that:

> This all stems from a work related accident that occurred on 3-9-12 where I suffered some minor skin tears and a broken prosthetic limb… I was able to make a temporary repair so I could at least walk. I was returned to work… In June I began complaining to F.S. Staff that it was becoming very painful to walk. After about a month (without action) I contacted HSU. I

6

> was seen on 7-25-12 and learned that no appointment had been made. I was placed on cell-confinement ever since… I don't believe I should be punished because I am unable to perform my job duties because of a work related accident.

(Muenchow Decl. ¶ 9; Pollard Decl. ¶ 7.) The plaintiff wanted to be paid until his prosthetic limb was repaired and he could find another job.

As the ICE, Muenchow investigated the offender complaint. Muenchow prepared an ICE Report which identified the "Subject of complaint" as "Work & School Programs" and summarized the complaint as "Inmate complains regarding loss of job." Based on his investigation, Muenchow found that, even if a work related accident caused the damage, that did not constitute liability on the part of the institution to unconditionally maintain the plaintiff's employment anywhere or continue his food service pay. On November 20, 2012, Muenchow recommended that the offender complaint be dismissed.

On November 27, 2012, the Reviewing Authority, Warden William Pollard, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2012-21424. The plaintiff appealed this decision to the CCE office, where it was received on December 6, 2012.

On December 6, 2012, Corrections Complaint Examiner (CCE) Charles Facktor recommended that the appeal be dismissed noting that the institution's decision reasonably and appropriately addressed the issue raised by the inmate and that, on appeal, the inmate presented no information to warrant a recommendation overturning that decision. Based on the findings and recommendation of the CCE, Deputy Secretary Cindy O'Donnell

dismissed Offender Complaint WCI-2012-21424 on January 2, 2013.

Muenchow and Pollard's only involvement with the plaintiff's claim consisted of their involvement in the recommendation of the disposition of Offender Complaint WCI-2012-21424. After reviewing and investigating the plaintiff's complaint, Muenchow and Pollard did not find any violation of institution rules or the plaintiff's rights based on his termination from his food service employment.

**ANALYSIS**

The defendants contend that, (1) the plaintiff may not pursue his employment-related claim under Title II of the ADA based on *Brumfield v. City of Chicago*, 735 F.3d 619 (7th Cir. 2013); (2) the plaintiff failed to exhaust his administrative remedies; (3) the plaintiff may not pursue individual capacity claims under the ADA; and (4) no official capacity claims may proceed since the only relief the plaintiff currently seeks is monetary relief. The defendants further contend that the plaintiff's claims fail on the merits.

The plaintiff disagrees with each of the defendants' arguments. He also contends that the Court should deny summary judgment pursuant to Federal Rule of Civil Procedure 56(d). With regard to the plaintiff's Rule 56(d) contention, he merely cites to Rule 56(d) on the front page of his summary judgment brief. The plaintiff does not support his assertion with a description of the particular discovery he seeks, an explanation showing how that discovery would preclude the entry of summary judgment, and a statement justifying why this discovery was not obtained earlier. *See Nieves-Romero v. United States*, 715 F.3d

8

375, 381 (1st Cir. 2013); *see also Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011). Moreover, the plaintiff has obtained substantial discovery from the defendants (*see* ECF No. 25) and the Court has granted his request for additional time to conduct discovery. The plaintiff has not demonstrated that the Court should postpone ruling on the defendants' motion for summary judgment.

A. ***Brumfield v. City of Chicago***

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). In *Brumfield v. City of Chicago*, the Court of Appeals for the Seventh Circuit considered a lawsuit filed by a former Chicago police officer who alleged that she was unlawfully fired under Title II of the ADA and Section 504 of the Rehabilitation Act as well as a separate lawsuit under Title I of ADA. 735 F.3d at 622. The court held that "Title II of the ADA does not cover disability-based employment discrimination." 735 F.3d at 630.

In reaching its decision, the court of appeals noted that Title II of the ADA provides "that state and local governments may not exclude eligible disabled persons from 'participation in' or 'the benefits of' governmental 'services, programs, or activities' or otherwise 'subject' an eligible disabled person 'to discrimination.'" 735 F.3d at 622; *see* 42 U.S.C. § 12132. By contrast, Title I "specifically prohibits *employment* discrimination on

9

the basis of disability." *Id.* (emphasis in original); *see* 42 U.S.C. § 12112(a). After discussing the language and purposes of Titles I and II of the ADA, the Seventh Circuit reasoned that "Title II is clearly inapplicable to employment discrimination because Title I specifically, comprehensively, and exclusively addresses disability discrimination in employment." *Brumfield*, 735 F.3d at 628. Thus, the court held that, in the Seventh Circuit, "employment-discrimination claims must proceed under Title I of the ADA, which addresses itself specifically to employment discrimination and, among other things, requires the plaintiff to satisfy certain administrative preconditions to filing suit." *Id.* at 630; *see* 42 U.S.C. §§ 12117(a), 2000e–5.

The defendants contend that the plaintiff's employment-related claim is foreclosed by *Brumfield*. However, *Brumfield* is distinguishable. As an initial matter, the Supreme Court has held that Title II of the ADA applies to prisoners in that prisons "provide inmates with many recreational 'activities,' medical 'services,' and *vocational 'programs*,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (emphasis added). *Brumfield* does not purport to overrule the Supreme Court's holding as it relates to inmates participating in vocational programs, i.e., prison jobs. Likewise, the defendants have not cited any authority that an inmate participating in a prison's vocational program is an employee under Title I and may sue under Title I of the ADA, which would render redundant an action under Title II.

> [T]he only people who can invoke the protection of Title II are those who are eligible to receive or participate in the services, programs, or activities offered by state and local governments, the statute's prohibition against discrimination is properly read to cover all types of disability discrimination in the "outputs" of state and local government - their very delivery of public services, programs, and activities to eligible recipients.

*Brumfield*, 735 F.3d at 628. Here, the plaintiff's "employment" at WCI is an "output" of state and local government, not an "input" of a public agency such as pubic employment. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 n.2 (9th Cir. 2010) (citing *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169 (9th Cir. 1999)). Accordingly, *Brumfield* does not prohibit the plaintiff from pursuing his prison employment-related claims under Title II of the ADA.

**B.      Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion

11

requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

It is undisputed that the plaintiff filed Offender Complaint WCI-2012-21424 in which he complained that he lost his job. The complaint was dismissed, the plaintiff appealed to the CCE, and the dismissal was upheld on appeal. The defendants contend that WCI-2012-21424 did not exhaust the plaintiff's administrative remedies because it did not allege that the plaintiff's employment was ended based on any disability or that a violation of ADA occurred.

A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *see Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *see*

12

*Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

With respect to the level of detail in an offender complaint, the DOC administrative rules require that offender complaints filed by an inmate "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e). The standard is whether the offender complaint would put an official on notice of the plaintiff's claim. Here, the plaintiff's offender complaint gave notice of a claim regarding termination from his job. Although he did not say "discrimination" in his offender complaint, the DOC's ICRS rules do not require that level of specificity. *See* Wis. Admin. Code § DOC 310.09(1)(e). Accordingly, the plaintiff's ADA claim is not subject to dismissal based on exhaustion.

### 3. Individual/Official Capacity Claims

It is well-established that the ADA authorizes suits only against public entities. *See* 42 U.S.C. §§ 12131-12133; *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds by, *Bd. of Trs. v. Garrett*, 531 U.S. 356, 374 n. 9 (2001)). Therefore, the plaintiff may not proceed against the defendants in their individual capacities.

The defendants contend that the plaintiff may not proceed on official capacity claims against the defendants because he seeks only monetary relief. However, it is an open question whether the plaintiff may seek damages against a state for an ADA claim that does

13

not independently violate the Constitution.[5] *See Georgia*, 546 U.S. at 159 (expressly declining to decide whether states are immune from suits for damages arising from conditions that violate the ADA but not the Constitution); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). The Court need not address that issue though, because the undisputed facts demonstrate that the plaintiff's claim fails on the merits.

To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, ___ F.3d ___, 2015 WL 449967, at *5 (7th Cir. Feb. 4, 2015) (quoting *Love v. Westville Corr. Ctr.,* 103 F.3d 558, 560 (7th Cir. 1996)); *see also* 42 U.S.C. § 12132. Here, the plaintiff was not denied services due to his disability. Rather, he was placed on "sick cell" on July 25, 2012, and terminated for medical reasons on October 1, 2012, due to the effects of his injury following the accident. He had trouble walking and was in pain. The plaintiff was unable to perform his job duties as stockman until his prosthetic was repaired. If the plaintiff's prosthetic had been repaired prior to his termination, Tuckwell would have maintained his employment until the two-year termination policy came into effect. The plaintiff was paid his normal hourly wage up until the time he would have been terminated

---

[5] The plaintiff is proceeding on an Eighth Amendment deliberate indifference to a serious medical need claim against WCI's Health Services Manager and a nurse based on allegations related to the medical care he received after the accident including the repair of his prosthetic. *Neisler v. Larson*, Case Number 14-cv-655-PP (E.D. Wis.).

14

(November 19, 2012) based on the two-year rule. He started a new job on January 11, 2013. Based on these undisputed facts, a reasonable jury could not conclude that the defendants violated the plaintiff's rights under the ADA.

## ADDITIONAL MATTER

The plaintiff filed an extensive response to the defendants' motion for summary judgment (ECF Nos. 39-45) and the defendants filed a reply. The plaintiff subsequently filed an amended response (ECF Nos. 51-53) which reproduces his original response and, additionally, responds directly to the Defendants' Proposed Findings of Fact. However, the Court already considered the plaintiff's original response affidavit and noted any relevant factual disputes. The plaintiff did not seek leave to file an amended response. Accordingly, the Court will not consider the plaintiff's additional summary judgment materials.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing this action.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2015.

**SO ORDERED,**

*/s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U. S. District Judge**